By the Court. Duer, J.
It is needless to cite authorities to prove that, by our law, a mortgagee has an insurable interest, corresponding in its amount with that of the debt which the mortgage was intended to secure; and we apprehend it to be equally certain, that, in the event of a total loss, he is entitled to recover the whole amount insured, provided it does not exceed that which at the time of the loss was due upon the mortgage. We do not believe, and certainly have not been able to discover, that there is any adjudged case, in which evidence has been admitted to show that the mortgaged premises, notwithstanding the loss, were still an ample security for the debt; and we think ourselves warranted to affirm, that in no text-writer, foreign or domestic, is any intimation to be *5 found that such evidence can be received, to defeat or diminish the recovery of the assured. Hence, were there no other defence in this case than that the plaintiff has not been damnified, we should have no difficulty in holding that he is entitled to retain the judgment that has been rendered.
It is indeed true, as was insisted by the counsel for the defendants, that, in this state, since wager policies have been abolished, the assured, whether in a marine or fire policy, can never be permitted to recover more than a full indemnity for the loss which it is proved that he sustained; but it is a mistake to suppose that this salutary rule is violated by permitting the assured, when a mortgagee, to recover the sum insured, when it is proved that such was the amount of his debt and of the loss upon the property insured. Although his recovery, under these conditions, is allowed, there is no case in which he will recover more than an indemnity, for his actual loss,, since, according to the nature of the contract and the intention of the parties, the sum, which he receives under the policy, must either be applied to the satisfaction of the mortgage, or its payment by the insurers will operate as a transfer to them of his .own interest in the debt and its securities. There is no case in which, after the payment of a loss, he will be allowed to enforce for his own benefit the payment of the debt. He can never recover from the mortgager for his own benefit the sum which has been paid to him by his insurers.
We pass to the consideration of that which we deem to be the only serious question in the case, namely, whether it appears from the evidence that there has been such a virtual misrepresentation, or concealment, of material facts, as may have the'effect of avoiding the policy.
We consider the law as fully settled, that where an insurance is" made by a mortgagee, eo nomine, or with the sole view of protecting his own interest as such, the payment of a loss has not the effect of discharging in whole or in part the mortgage debt, but on the contrary operates in equity, and in this state, since the Code at law, as a transfer of the debt and all its securities to the insurer, who, in°the language of the Eoman law, is subrogated to all the rights and remedies of the assured; nor is this doctrine limited in its application to an insurance by a mortgagee. The rule is universal, that, where a total loss'is paid, the underwriter succeeds to all *6 the collateral remedies to which the assured might have resorted for obtaining its compensation. (Kendall v. Cochran, 1 Ves. 98; Gracie v. N.Y. Ins. Co. 8 John. R. 245; Mason v. Sainsbury, 2 Park on Ins. by Hildyard, 959; Clark v. Inhabitants of Blything, 2 B. & C. Rep. 254; Yates v. White, 5 Scott, 640; Atlantic Ins. Co. v. Storrow, 5 Paige, 286; Tyler v. Ætna Ins. Co. 12 Wend. Opinion Nelson, J. 516 S. C.; Opinion Chan. Walworth, 16 Wend. 397, 398; Carpenter v. Providence Washington Ins. Co, 16 Peters, 495; Marsh on Ins. 242; 2 Phillips, 419; 3 Kent’s Com. 371 n.) We are aware that in the case of King v. State Mut. Ins. Co., (7 Cushing 3,) opposite views of the law were taken by the Supreme Court of Massachusetts, and were explained and defended by the Ch. J. (Shaw) in an elaborate opinion; but the conclusions at which the learned Judge arrived are not only irreconcileable with the authorities to which I have referred, but, it seems to us, are inconsistent with the nature of an insurance as a contract of indemnity. Hence, whatever may be the rule that would now be followed in Massachusetts, we retain the conviction, that the general law of insurance relative to the construction of a policy upon the interest of a mortgagee, as declared in our own courts and in those of the United States, is such as has been stated. Such being, in this state, the ^"known law, it is reasonable to believe, that when the interest of the assured is described in the policy, or is represented to the insurers as that of a mortgagee, a much lower premium will be charged than when the insurance is made for an absolute owner. It is reasonable to believe, that the insurers will rely upon a transfer of the debt and its securities, as furnishing the means, if not of wholly reimbursing, yet of greatly reducing the amount of any loss they may be required to pay; and that the premium charged will, therefore, bear no more than a just proportion to the probable reduction of their eventual liability. Hence, if the assured has by his own act placed it out of his power to make to the insurers the transfer, upon which they were justified in relying, and the fact was not disclosed to them when the policy was effected, it would seem, upon principle, that the concealment, as having deprived them of the premium they would otherwise have demanded, must be regarded as material and fatal.
To apply these observations to the case before us; it appears that, before the-policy in suit was effected; it was agreed between *7 the mortgagers and the plaintiff that he should insure, as mortgagee, and keep insured, the building covered by the mortgage, for their benefit, and at their expense, he holding the policy for his security; and it is also proved that they have repaid to him the premiums which he advanced. It is not denied that, as between the parties, this agreement is valid; and its effect manifestly is, that if the loss that is claimed shall be recovered from the defendants, the amount must be applied pro tanto in satisfaction of the mortgage debt, since it is only by such an application that the insurance can be made to enure to the benefit of the mortgagers. The defendants will therefore be prevented from acquiring a beneficial interest in the debt and its securities, in proportion to the sum which, in satisfaction of the loss, they will be compelled to pay, although to this interest, with all proper remedies at law and in equity for its protection, but for the agreement, they would certainly have been entitled. The effect of the agreement was, therefore, to change the nature of the contract, by making that which on the face of the policy is an insurance for the benefit of the plaintiff, as mortgagee, an insurance for the benefit of the mortgagers, as owners. We are not disposed, however, to deny that if the existence and terms of the agreement had been made known to the defendants when the insurance was effected, the policy, in its actual form, might still be regarded as a valid contract, and the plaintiff be entitled to recover for the benefit of the mortgagers, and as their trustee, the full amount of the loss which is claimed; but there is no evidence to show that this disclosure was made, nor has it been asserted that such was the fact. We are therefore driven to the consideration of the question whether the omission to make this disclosure, taking into consideration? the terms of the policy, was a virtual misrepresentation or concealment of a fact which, as material to the risk which the defendants consented to assume, the plaintiff was bound to communicate.
The learned and experienced counsel for the plaintiff strenuously contended that as no inquiries were made by the defendant, the plaintiff was under no obligation to disclose the nature and extent of his own interest, or of the rights and interests of the mortgagers, and he rested his argument upon the ground that as the feet not disclosed had no tendency to increase or vary the risk of fire,—the only risk covered by the policy,—they were not ma *8 terial, or if in any point of view they could be regarded as material, the defendants had constructive notice of their existence. They knew that the plaintiff was a mortgagee, and if they wished to know the terms of the contract between him and the mortgagers, they were bound to inquire. By omitting to inquire they waived the information, and the policy must, therefore, receive the same construction as if the information had been given. The next inquiry, therefore, is, whether these positions can be sustained.
It is undoubtedly true, as a general rule, that the assured is not bound to communicate to the underwriters the particular nature of his interest in the property insured, but from this rule there are many exceptions. There are cases, as when the insurance is upon freight, bottomry, profits, &c., in which, in order to render the contract valid, the nature of the interest must be specified in the policy. And others, in which the nature of the interest, when special, although not necessary to be stated in the policy, must, even where no inquiry is made, be disclosed to the underwriters. It may be admitted that the interest of the assured has no connection with, or influence upon, the risks insured, considered in themselves. Whatever may be his interest, they remain the same, yet there still are cases in which the particular nature of the interest is essential to be known to enable the underwriter to form a proper estimate of the premium which he ought to require, and, we apprehend, that in all such cases, the effect of a misrepresentation. or concealment of the interest, is either to discharge the insurer from the loss, or to avoid the policy—nor do we doubt that these observations are just as applicable to an insurance against fire as against marine risks.
To illustrate and support them, we shall refer to a few decisions :■—■
In an early case which arose in the circuit of that eminent Judge, Mr. Justice Washington, the interest of the plaintiff, who was insured generally, and claimed a total loss, was of a very special "nature, arising from his having given security to be answerable for the value of the ship and cargo insured, in the event of their condemnation as prize of war. The Judges (Washington and Peters) were of opinion that it was not necessary that the nature of the interest as special should have been stated in the policy, but that it probably ought to have been communicated to the defendants, *9 and they instructed the jury that should they be of opinion that a knowledge by the insurers of the special nature of the interest that was meant to be covered, would have altered the amount of the premium, and that the fact had not been sufficiently disclosed, the omission to make the disclosure vacated the policy. (Russell v. Union Ins. Co., 4 Dallas, 421.)
In a much more recent case, decided by Mr. Justice Story, (Ohl v. Eagle Insurance Co., 4 Mason, 397;) the doctrine as to the necessity of a disclosure where the interest is special, was carried still further. The plaintiff in this case claimed to recover a total loss upon the entire ship insured, although it appeared from the register and other papers that he had a legal title, as part owner, only to a moiety. He endeavored, however, to establish an equitable title to the other moiety by parol evidence, but the learned Judge held that as this equitable interest had not been disclosed to the underwriters, no evidence could be admitted to prove its existence, and that the recovery of the plaintiff must therefore be limited to one half of the amount which he claimed.
There is an important distinction between these cases to which it is necessary to advert. Mr. J. Story in effect decided that the omission to disclose the peculiar nature of the interest of the assured was of itself a bar to his recovery, by rendering the insurance void as to the interest concealed, while Mr. J. Washington, and his associate, held that the effect of the omission depended solely upon its materiality, which, as a question of fact, it belonged to the jury to determine, and it is this opinion which we hold ourselves bound to follow, not only as more consonant to the analogies of the law, but as fully sustained by other adjudged cases.
Thus in the case of Oliver v. Greene, which arose in the Supreme Court of Massachusetts, (3 Mass. 133,) the plaintiff, as in the case of Ohl v. The Eagle Insurance Co., was the legal owner of one half of the vessel insured, and had a special property in the other moiety, which was neither specified in the policy, nor made known to the defendants when the insurance was effected, and their counsel therefore contended that by its concealment they were discharged from the loss. But the court said that, although the concealment, if material, would avoid the policy, yet they had no right to presume that it was material; evidently meaning, that the question ought to have been submitted to the determination *10 of the jury, but, at the same time, affirming the doctrine that such a concealment, when found to be material, is fatal to the contract.
The case which bears the nearest resemblance to the present, as the insurance was against fire on land, and which, as a decision of the Supreme Court of the United States, also carries with it the highest authority, is that of Lawrence v. The Columbian Ins. Co. (2 Peters’ S. C. R. 25, 26.), The plaintiffs in their application for ‘the insurance, stated that the buildings to be insured belonged to them, but it appeared upon the trial, that they were not the legal owners, but had only an equitable and contingent interest. The Judge, however, who presided on the trial, instructed the jury that the omission of the plaintiffs to disclose the peculiar nature of their interest, was not a concealment that could be regarded as material, and the counsel of the defendants, upon this and other grounds, excepted to his charge. The Supreme Court sustained the exception, and in their opinion laid down the general rule, that in all cases where the nature of the interest meant to be insured, may influence the mind of the underwriter in estimating the premium, it ought to be disclosed. When the case was again before the court, after a.second trial, all the Judges adhered to this opinion, holding this language, “ That a decisive test to ascertain whether a misrepresentation or concealment is material, is to ascertain whether, if the true state of the title had been known, it would have enhanced the premium. H it would, the misrepresentation or concealment is fatal to the contract.” In the case before us, the decisive test has not been applied; if it ought to be, there must be a new trial.
It may be said, that the cases that have been cited, have no present application, since, in the case before us, the nature of the interest of the plaintiff or mortgagee was not merely disclosed to the defendants, but was specified in the policy. But in reality it was not his own peculiar interest, as mortgagee, that was meant to be covered by the policy, but substantially that of the mortgagers’, as owners, and hence, his omission to disclose the agreement which made it his duty to make the insurance for their benefit, and which is relied on as giving that construction to the policy, was, certainly and emphatically, a concealment of facts affecting the title or interest insured, and we have no right to say, that had these facts been known to the defendant, they would not have operated to *11 enhance the premium. The present case is, in truth, stronger than any one of those that have been cited. It- is not the case of a mere concealment. The description of the plaintiff in the policy was calculated to mislead the defendants. It warranted them to believe that it was his own interest as mortgagee, that alone was meant to be insured, and consequently, that on the payment of a loss, should a loss happen, they would be entitled to the transfer of the debt. It operated, therefore, by a concealment of the fact, that no such transfer could be made, as a virtual misrepresentation :—as affirming by implication that which was known to be untrue.
It appears to have been held by the Supreme Court at Washington, in the case of Carpenter v. the Providence Washington Ins. Co., (16 Peters, 496,) that in no case can a mortgager take any benefit from an insurance made by the mortgagee as such, and in delivering his judgment, Mr. J. Story denied that “any court could be at liberty to construe a policy made by A, in his own name, to be not a policy in his own interest, but on the interest of B, who is a stranger to the contract.” The learned Judge evidently meant, that the explanatory words by which alone an insurance made by one person in his own name may be extended to protect the interest of another, must be found in the policy itself, but we do not think that the decisions in our own courts and in England require us to carry the doctrine to this extent. When the necessary explanation is in fact made, and the underwriters assume the risk, knowing that the insurance is made by a mortgagee for the benefit of the mortgager as well as his own, we do not doubt that the policy is binding, and a loss recoverable. To warrant a recovery, however, it must appear either that the proper disclosure was made, or that the concealment, in the particular case, was immaterial.
It follows, from the observations already made, that we do not assent to the position that the defendants are chargeable, in law, with a knowledge of the agreement between the plaintiffs and the mortgagers, and are bound by its terms, to the same extent that they would have been, had these terms been expressly communicated. . We do not think that the doctrine of constructive notice is applicable to the case. The defendants are, probably, bound by all the provisions and stipulations contained in the mortgage itself, but it would be most unreasonable to impute to them the *12 knowledge of a distinct, collateral, and verbal agreement varying the usual construction of the policy, and the nature, as it would otherwise have been understood, of the interest insured. We apprehend that the doctrine of constructive notice, as excusing an express disclosure, is only applicable when from the facts already known to the insurer, he was bound to infer the existence of other facts, which, although material, were not communicated. It is in such cases only that, if he desires fuller information, he is bound to inquire, and that his silence is construed as a waiver of a more explicit disclosure. (Carter v. Boehm, 3 Burr, 1905; Caust v. Masterman, 3 Douglas, 161; Kneeland v. Glover, 7 East. 457; 1 Emerigon, 172.) The defendants in this case so fax from having any reason to believe or suspect that the insurance was made for the benefit of the mortgagers, were justified in believing, as we have already said, that it was made for the benefit of the plaintiff alone.
Our conclusion is, that for the purpose of applying the decisive test, which it has been shown is necessary to be applied in cases like the present, it is our duty to grant a new trial. We have no right to say, as a court, whether the omission of the plaintiff to make known to the defendants that the insurance was effected for the benefit of the mortgagers, as well as his own, was or was not a material concealment. We have no right to say, that had all the facts been known to them, they would not have demanded a larger premium than that which they actually received. These are questions of fact which it is the exclusive province of a jury to determine. They were not determined, nor meant to be determined, upon the trial already had. That they may be, a second must be allowed.
We deem it unnecessary to discuss the questions that have been raised as to the sufficiency of-the preliminary proofe. They depend entirely, in our opinion, upon the construction and effect that may ultimately be given to the policy. If, upon the questions of misrepresentation and concealment, a verdict shall be rendered in favor of the plaintiff, the objections to the preliminary proofe will be no bar to his recovery of a judgment.
New trial granted. Costs to abide the event.